IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| Rosie L. Davis, | ) |
| | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )     No. 11-2902 |
| | ) |
| FedEx Corporate Services, | ) |
| Inc., | ) |
| | ) |
| | ) |
|     Defendant. | ) |
| | ) |
| | ) |

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL
SUMMARY JUDGMENT

On October 13, 2011, Plaintiff Rosie L. Davis ("Davis") filed a Complaint against Defendant FedEx Corporate Services, Inc. ("FedEx"), alleging two counts of unlawful racial discrimination under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, and one count of failure to pay overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215. (ECF No. 1.) She filed an Amended Complaint on December 1, 2011. (ECF No. 8.) Davis filed a Second Amended Complaint on July 15, 2012, alleging two counts of violation of the Tennessee Human Rights Act ("THRA"), the first for discrimination under T.C.A. § 4-21-401, and the second for

retaliation for engaging in protected activity under T.C.A. § 4-21-301. (Am. Compl, ECF No. 13.)

Before the Court is FedEx's December 6, 2013 Motion for Partial Summary Judgment (the "Motion"). (Mot., ECF No. 46.) Davis responded on January 7, 2014 (the "Response"). (Resp., ECF No. 50.) FedEx replied on January 23, 2014. (ECF No. 55.) For the following reasons, the Motion is GRANTED in part and DENIED in part.

## I.  Background

Davis, who is African American, began working for FedEx in 1989. (Def. Stat. of. Undisp. Facts, ECF No. 46-2 ¶ 1.) Since 2003, she has reported to three different managers, Karen Beverly ("Beverly"), Wendy McNamara ("McNamara"), and Susan Carnes ("Carnes"). (Id. ¶ 2.) Davis claims that she began "working out of class" in or about June 2003. (Compl., ECF No. 1 ¶ 13.) Davis was a Marketing Coordinator, which is an N5-level, nonexempt position, but believes she was performing the duties of an Associate Marketing Specialist, an E1-level, exempt position. (Id. ¶ 3, 4.)

The record is not clear on the precise definitions of exempt and nonexempt. According to Carnes, "exempt means you are not paid hourly." (Carnes Dep., ECF No. 50-6 at 13.) Mallory Herlong ("Herlong"), who worked on the same team as Davis, understood exempt to mean "that you're salaried, full

time not clocking in and out." (Herlong Dep., ECF No. 50-8 at 22, 23.) Herlong testified that in a salaried, nonexempt position, the employee is paid a salary based on a 40-hour work week, but the paycheck reflects an hourly rate. (Id. at 23.)

An accumulation of exempt or "equivalent" experience is necessary for certain promotions. (See id.; Davis Dep., ECF No. 46-3 at 5, 23; Carnes Dep., ECF No. 50-6 at 15.) E1-level positions are exempt. (ECF No. 46-4.) Two years of exempt or equivalent experience is required to qualify for an E1B-level position. (Carnes Decl., ECF No. 46-4 ¶ 9.) Five years exempt or equivalent experience is required to qualify for an E2-level position. (Id. ¶ 10.) FedEx's Education/Experience Equivalency Table states that "[t]wo years of directly related, part-time experience to the job being sought can be used to satisfy 1 year of full-time experience." (ECF No. 50-3 at 5.) An applicant or employee's related master's degree "can be exchanged for 1 year of experience." (ECF No. 50-3 at 5.)

## A. Reclassification Audit

Before October 22, 2010, Davis complained that she was working out of class. (Crockum-King Dep., ECF No. 50-5 at 12.) An N5-level position is characterized by administrative work, but Davis claims that she was performing significant managerial tasks. (Def. Stat. of Undisp. Facts, ECF No. 46-2 ¶ 9.) A coworker testified that Davis trained her and numerous of her

colleagues. (Jolley Dep., ECF No. 50-7 at 5.) Davis's performance appraisals stated that she "conduct[ed] effective GPAT[1] meetings." (Crockum-King Dep., ECF No. 50-5 at 17.)

Following Davis's complaint, FedEx conducted a job reclassification audit, led by Susan Russell, a Director in the marketing department. (Id. at 12.) The investigation was aided by Stephanie Crockum-King ("Crockum-King") and Sharron Jackson ("Jackson"), both of whom worked in human resources. (Id. at 13; Davis Dep., ECF No. 46-3 at 4; Davis Decl., ECF No. 46-4.) The investigation included an interview with Davis, discussions with Davis's supervisor, and a review of her performance appraisals. (Crockum-King Dep. at 17; Davis Dep. at 4.) During the interview, Davis told Jackson about Davis's extensive responsibilities, and Jackson appeared surprised by their scope. (Davis Dep. at 4.) Jackson said that Davis's responsibilities were "a lot" given her position and asked if Davis were working overtime. (Id.) Nevertheless, Davis was notified on October 18, 2010, that her position would not be reclassified because the audit had concluded that her duties were administrative. (Def. Stat. of Undisp. Facts, ECF No. 46-2 ¶ 9.)

That conclusion rested in part on the job audit's finding that "Rosie has never run a GPAT meeting, and statements are highly exaggerated." (Crockum-King Dep., ECF No. 50-5 at 14.)

---

[1] The record does not contain a definition of "GPAT".

When confronted with the apparent discrepancy between that conclusion and Davis's performance appraisals, Crockum-King testified that:

> in my mindset, what I picked up [from Davis's performance appraisals] was that she had something to do with the GPAT meeting. I didn't pick up that she facilitated it and ran it as a professional person would facilitate and run it. I picked up that she handled the meetings . . . .

(Id. at 17.) Crockum-King never questioned Davis's supervisor about whether Davis conducted GPAT meetings or merely provided administrative support. (Id. at 18.)

On October 22, 2010, Davis filed an internal EEO complaint, alleging that her job should have been classified as an E1-level position, which is exempt. (Def. Stat. of Undisp. Facts, ECF No. 46-2 ¶ 8.) When Davis was notified that her position would not be reclassified to an E1, McNamara encouraged Davis to apply for an open E1-level position, Associate Marketing Specialist. (Id. ¶ 11.) Davis applied for and received that position, effective December 1, 2010. (Id. ¶ 12.) In her new position, Davis continued to report to McNamara until October 16, 2011, when McNamara was replaced by Carnes. (Id. ¶ 13.)

### B. Treatment of Davis's and Her Coworkers' Experience

Soon after Carnes replaced McNamara, Davis began asking Carnes when Davis could be promoted to the next level within her pay band, Marketing Specialist, which is an E1B-level position. (Id. ¶ 26.) On March 1, 2012, Davis emailed Carnes asking

whether Davis had sufficient experience to apply for that position. (Exhibit, ECF No. 46-4 at 6.) It required two years of exempt-level or equivalent experience. (Carnes Decl., ECF No. 46-4 ¶ 8.) Crockum-King testified that, based on Davis's seven or eight years of experience as a Marketing Coordinator, Davis would be eligible to apply for a position as a Senior Marketing Specialist, which is a band above the position Davis sought. (Crockum-King Dep., ECF No. 50-5 at 8.) At the time of discovery for this lawsuit, Davis was the longest serving member of her team, but her job as an E1 Associate Marketing Specialist was in a lower band than the job of any of her coworkers. (Herlong, ECF No. 50-8 at 38, 50-41.)

Carnes initially did not provide a direct answer to Davis's inquiry. (Id.) Davis followed up, stating that her question had not been answered, and asking whether she should speak directly to human resources. (Id. at 5.) Carnes then emailed Jackson, forwarding Davis's email. (Id.) Jackson responded: "Hello Susan – non-exempt experience does not count towards the minimum requirements for exempt level jobs." (Id.) Carnes "relayed this information to Davis," telling her that she was not qualified to apply for the position as an E1B Marketing Specialist. (Carnes Decl., ECF No 46-4 ¶ 8.)

In calculating whether Davis had the requisite experience to apply for the E1B position, Carnes did not consider Davis's

previous part-time, nonexempt experience.  (Carnes Decl., ECF No 46-4 ¶ 8.)

Carnes considered Davis a "good employee" who did her job "very well", but promoted several other people ahead of Davis. (Carnes Dep, ECF No. 50-6 at 38.)  Carnes hired Kent Kimball ("Kimball") for the E1B Marketing Specialist position that Davis had inquired about.  (Carnes Decl., ECF No. 46-4 ¶ 9.)  In finding that Kimball had the requisite exempt experience, Carnes credited Kimball with two years of exempt experience for his master's degree instead of the one year specified by FedEx's equivalency guidelines. (Id.; ECF No. 50-3 at 5.)  Carnes hired Linda Erickson ("Erickson") for an E2A Senior Marketing Specialist position, which required five years exempt or equivalent experience.  (Carnes Decl., ECF No. 46-4 ¶ 10.)  In finding that Erickson had the requisite experience, Carnes credited Erickson with two years of exempt experience for a master's degree.  (Carnes Dep., ECF No. 50-6 at 23.)  Erickson had not yet completed the degree when she was hired.  (Id.) Carnes found that the other three years of required exempt-level experience were satisfied by Erickson's previous job as a realtor and as a market specialist for a temporary agency.  (Id. at 24-25.)  Carnes promoted Courtney Moore ("Moore") to an E2A Senior Marketing Specialist.  (Id. ¶ 11.)  Carnes found that Moore had the requisite experience because Carnes credited Moore

with two years of work for her master's degree, one year of work in an exempt-level position at FedEx, and two years experience at another company working as a Marketing Coordinator. (Carnes Dep., ECF No. 50-6 at 14-15.) Kimball, Erickson, and Moore are white. (Jolley Dep., ECF No. 50-7 at 5.)

Deborah Jolley ("Jolley"), an E2B-level employee at FedEx, worked on and off with Davis for about twenty years. (Jolley Dep., ECF No. 50-7 at 5.) Jolley testified that Davis trained her. (Id. at 5.) Jolley also testified that Davis trained Erickson and Kimball, and contributed to the training of Moore. (Id.)

### C. Overtime Pay

As a salaried employee, Davis was not aware that she was entitled to overtime compensation. (Davis Dep., ECF No. 46-3 at 4.) Neither human resources nor any of her managers had ever told Davis that she was entitled to overtime. (Id. at 23.) FedEx policy states that "[m]anagement is responsible for maintaining records of overtime to non-exempt employees." (ECF 46-3.) The first time Davis realized she was entitled to overtime was when Jackson asked her during the job audit whether she had claimed overtime pay. (Id. at 4.) The overtime-record form for FedEx requires nonexempt employees to list a date, daily hours worked, and the signatures of the relevant employee and manager. (Id.) Before November 2010, neither Davis nor her

8

managers ever reported any overtime hours that Davis worked. (Def. Stat. of Udisp. Facts, ECF No. 46-2 ¶ 7.) According to Davis, no one had had informed her that she was entitled to overtime or provided her with an overtime-record form. (Davis Dep., ECF No. 46-3 at 23).

On November 1, 2010, Davis emailed Janice Walthall with a list of functions, going back to 2005, that Davis had performed during periods in which she "may have been . . . work[ing] over 40 hours [a] week." (ECF No. 46-3 at 44.) The "periods" Davis specified were nine two-week training classes between 2005 and 2008, an audit between February 2009 and July 2009, and an audit beginning May 13, 2010. (Id.) On February 16, 2011, McNamara responded to Davis with "estimates for the total sixty hours and pay periods" for the projects Davis listed in her email to Walthall. (Id. at 45.) The email listed each project Davis had claimed with an individual estimate of the overtime hours Davis had worked, totaling sixty hours. McNamara asked Davis if she had any changes to the estimates. (Id.) Davis responded within minutes, stating that she had "[n]o changes to the estimates below." (Id.) Soon after, Davis received a check for sixty hours of overtime and deposited it. (Davis Dep., ECF No. 46-3 at 28.) She did not bring up the overtime issue again to anyone at FedEx. (Id.) In her deposition, Davis testified that she did not believe that this payment closed the matter. She

believes she is entitled to 50-60 hours of overtime *per week* for periods going back to 2005. (Id. at 27, 28.) When asked why she suggested no changes to McNamara's email, she stated that "that's when I went and filed the EEOC." (Id. at 29.)

Davis filed a Charge of Discrimination with the EEOC on February 11, 2011, alleging racial discrimination. (Def. Stat. of Undisp. Facts, ECF No. 46-2 ¶ 24.) In her deposition, Davis gave contradictory statements about the impact she believed her race had on the decisions about her employment. When asked if the decision not to reclassify her N5 position as an E1 position was based on her race or color, she answered "No." (Davis Dep., ECF No. 46-3 at 28.) However, she stated that she believed "everything was related to [] race. The discrimination, all of this was discrimination related to [] race . . . . I felt like I was being discriminated by the series of issues that happened with the filing the internal, the reclassification not being done, not being given an opportunity for a job to be posted with the department." (Id. at 35.) On November 13, 2011, she filed the Complaint, alleging claims of unlawful discrimination based on race. (ECF No. 1.)

## II. Jurisdiction

This Court has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367. Davis alleges two counts of unlawful racial

discrimination under Title VII and one count of failure to pay overtime under the FLSA. Davis also alleges two counts of violation of the THRA, the first for discrimination under T.C.A. § 4-21-401, and the second for retaliation for engaging in protected activity under T.C.A. § 4-21-301.

Federal courts have pendant jurisdiction to hear state claims that "are so related" to the federal claims in a case "that they form the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). That requires that the "[t]he state and federal claims [] derive from a common nucleus of operative fact." United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966). Davis's claims under the THRA derive from the same nucleus of operative fact as her Title VII claims. The Court has jurisdiction.

## III. Standard of Review

Under Federal Rule of Civil Procedure 56, the court shall grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by pointing out to the court that the non-moving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of her case. See Fed. R. Civ. P. 56(c)(1);

Asbury v. Teodosio, 412 F. Appx. 786, 791 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

When confronted with a properly supported motion for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). A genuine dispute for trial exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Wasek v. Arrow Energy Servs., 682 F.3d 463, 467 (6th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The non-moving party must "'do more than simply show that there is some metaphysical doubt as to the material facts.'" Phelps v. State Farm Mut. Auto. Ins. Co., 680 F.3d 725, 735 (6th Cir. 2012) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). A party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Beckett v. Ford, 384 Fed. Appx. 435, 443 (6th Cir. 2010) (citing Celotex Corp., 477 U.S. at 324). Instead, the non-moving party "must adduce concrete evidence on which a reasonable juror could return a verdict in [her] favor." Stalbosky v. Belew, 205 F.3d 890, 895 (6th Cir. 2000) (citations omitted); see Fed. R. Civ. P. 56(c)(1). The court does not have the duty to search the record for such evidence. See Fed. R. Civ. P. 56(c)(3); InteRoyal Corp. v. Sponseller, 889 F.2d 108,

111 (6th Cir. 1989).  The non-moving party has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in her favor.  <u>See</u> Fed. R. Civ. P. 56(c)(1); <u>InteRoyal Corp.</u>, 889 F.2d at 111.

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." <u>FDIC v. Jeff Miller Stables</u>, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

## IV.  Analysis

FedEx argues that that (1) Davis cannot establish a *prima facie* case of racial discrimination; (2) even if she can, FedEx can offer legitimate, non-discriminatory reasons for its actions; (3) Davis cannot show that those reasons were pretext for discrimination; and (4) Davis cannot demonstrate a willful violation of the FLSA.  Davis argues that (1) she has stated a *prima facie* case of racial discrimination, (2) she has offered sufficient evidence that FedEx's nondiscriminatory reasons for its actions were pretext for discrimination, and (3) she can show willful violation of the FLSA.

### A. Discrimination Claims

Davis brings two counts of unlawful racial discrimination under Title VII. Davis claims that (1) FedEx's decision not to reclassify her job from N5 Marketing Coordinator to E1 Associate Marketing Specialist and (2) FedEx's failure to promote her from an E1-level position constituted unlawful discrimination in violation of Title VII. Davis brings corollary claims of racial discrimination under T.C.A. § 4-21-401, which the Court analyses under the same framework as her Title VII claims. T.C.A. § 4-21-101. Marpaka v. Hefner, 289 S.W.3d 308, 313 (Tenn. Ct. App. 2008).

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation . . . or privileges of employment." 42 U.S.C § 2000e-2(a)(1). Title VII also prohibits employers from acting "in any way that would deprive [employees] . . . of employment opportunities . . . because of [their] race . . . ." 42 U.S.C. § 2000e-2(a)(2).

Because there is no direct evidence of racial discrimination here, the Court analyzes Davis's discrimination claims using the McDonnell-Douglas burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804 (1973). The plaintiff must establish a *prima facie* case, which gives rise to an inference of intentional racial discrimination.

Sutherland v. Michigan Dept. of Treasury, 344 F.3d 603, 614 (6th

Cir. 2003).  To make that case:

> a plaintiff must show that (1) [she] was a member of a
> protected class, (2) [she] suffered an adverse employment
> action, (3) [she] was otherwise qualified for the position,
> and (4) [she] was . . . treated differently than a
> similarly situated, non-protected employee.

Deleon v. Kalamazoo Cnty. Rd. Comm'n., 739 F.3d 914, 918 (6th

Cir. 2014).  If the plaintiff establishes a *prima facie* case,

the burden shifts to the defendant to offer a legitimate, non-

discriminatory reason for the adverse employment action.

Sutherland, 344 F.3d at 615.  "If the defendant meets this

burden, then the burden of production shifts back to the

plaintiff to demonstrate that the proffered reason is a

pretext."  Id.

### 1. Davis's *Prima Facie* Case

The burden to establish a *prima facie* case of racial

discrimination "is not onerous."  See Texas Dept. of Community

Affairs v. Burdine, 450 U.S. 248, 253 (1981).  Davis meets the

first element.  She is African American, and it is not disputed

that she is a member of a protected class.  (See Def. Mem. of

Law, ECF No. 46-1.)

Davis meets the second element because she has made an

adequate showing that she suffered an adverse employment action.

An adverse employment action:

constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). It is generally a "tangible action [that] inflicts direct economic harm." Id. at 762.

Construed in the light most favorable to Davis, a reasonable jury could conclude that two tangible actions by FedEx caused Davis direct economic harm. First, FedEx failed to reclassify her job from an N5 Marketing Coordinator to an E1 Associate Marketing Specialist. Had the job audit determined that Davis had been working out of class for a period of years, she would have earned a higher salary immediately and been eligible to apply for more senior positions. Second, after Davis had attained the status of E1 Associate Marketing Specialist, FedEx failed to promote her when she sought an E1B Marketing Specialist position. Davis qualified as an applicant for that position because she "sought to file . . . an application but [was] denied the opportunity to file it." Hockett v. Administrator of Veterans Affairs, 385 F.Supp. 1106, 1111 (N.D. Ohio 1974).

Davis meets the third element because a reasonable jury could conclude that she was qualified for two separate advancements that she was denied. First, a genuine dispute

exists about whether Davis was performing work substantially equal to her white colleagues who were classified at the E1 level or above when she sought a job reclassification. See, e.g., Medrano v. MCDR, Inc., 366 F.Supp.2d 625, 636 (W.D. Tenn. 2005) (defining wage discrimination as being compensated less than white employees who perform substantially equal work). While working at the N5 level, Davis's performance appraisals showed that she performed managerial work, such as conducting strategy meetings. Davis's coworker, Jolley, testified that Davis not only performed work substantially equal to her higher-paid coworkers, but that she trained them. The job audit concluded that Davis's job classification at the N5 level was accurate because Davis merely performed administrative tasks. A reasonable jury could disagree.

Second, a reasonable jury could conclude that Davis was qualified for a promotion to Marketing Specialist, an E1B-level position. Crockum-King, a human resources specialist with FedEx who participated in Davis's job audit, testified that Davis's seven to eight years of experience as a Marketing Coordinator qualified Davis to apply for a position senior to that of Marketing Specialist. Although two years of exempt experience were required to apply, FedEx's equivalency guidelines state that "[t]wo years of directly related, part-time experience to the job being sought can be used to satisfy 1 year of full-time

experience."  Given the ambiguity of the distinction between part-time and nonexempt experience, a reasonable jury could conclude that Davis's seven to eight years of experience directly related to the Marketing Specialist position satisfied FedEx's requirement for two years exempt experience.

Davis meets the final element because she has made an adequate showing that she was treated differently than similarly-situated, non-protected employees.  To make that showing, a plaintiff must show that she and her coworkers were "similarly situated in all respects."  Hollins v. Atlantic Co., Inc, 188 F.3d 652, 659 (6th Cir. 1999).  "Precise equivalence" is not required.  Id.  Rather, a plaintiff must show that:

> the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

Id. at 660.  Kimball, Erickson, and Moore are white.  They worked in the same department as Davis and dealt with the same supervisor.  Each was hired or promoted instead of Davis.  Davis had worked in the department longer and had trained or contributed to the training of each of them.  Davis made less money than each of them.  Davis's supervisor believed that Davis did her job very well.  Davis has satisfied this element of her *prima facie* case.

Davis has established a *prima facie* case of discrimination, shifting the burden to FedEx to offer legitimate, non-discriminatory reasons for its actions. (See <u>Sutherland</u>, 344 F.3d at 615.

## 2. Legitimate, Non-Discriminatory Reasons

FedEx offers several legitimate, non-discriminatory reasons for its treatment of Davis.  FedEx claims that it did not reclassify Davis's job from an N5 to an E1 level because it concluded that her job duties were administrative.  It came to that conclusion after a job audit, in which FedEx employees interviewed Davis, discussed Davis's performance with her supervisor, and reviewed her job appraisals.  FedEx claims that Davis was not promoted from an E1-level position to an E1B-level position because she did not have the requisite experience, and those who were promoted had the requisite experience.  Those are legitimate, nondiscriminatory reasons sufficient to shift the burden back to Davis to show that they are a pretext for unlawful racial discrimination.  See <u>Sutherland</u>, 344 F.3d at 615.

## 3. Pretext

To show pretext, a plaintiff can offer "evidence that the employer's proffered reason had no basis in fact [or] did not actually motivate its decision . . . ."  <u>Asmo v. Keane, Inc.</u>, 471 F.3d 588, 596 (6th Cir. 2006).  Independent evidence of

racial discrimination beyond that offered in the *prima facie* case is not always necessary to show pretext. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000).

> [A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

Id. at 148. Davis has presented sufficient evidence for a jury to reasonably conclude that FedEx's proffered reasons did not actually motivate its actions.

Read in the light most favorable to Davis, FedEx's conclusion that Davis's job responsibilities were limited to administrative matters is not based in fact. There is evidence that Davis trained her coworkers and managed meetings. In discounting Davis's contributions to the GPAT meetings as merely "administrative", Crockum-King said she did not conclude from Davis's job appraisals that Davis "ran [the meetings] as a professional person would facilitate and run [them]. I picked up that she handled the meetings . . . ." A reasonable jury could conclude that such a distinction is not legitimate, but a pretext for unlawful racial discrimination.

Davis has presented sufficient evidence that FedEx's proffered reasons for failing to promote Davis from her E1-level position to an E1B-level position were a pretext. Carnes asserts that Davis did not have the requisite exempt experience

and that others did. Evidence in the record is inconsistent with that assertion. A reasonable jury could conclude that Carnes applied FedEx's experience-equivalency guidelines stringently to Davis and loosely to her white colleagues. Davis was given no credit for her many years working as a Marketing Coordinator, experience directly relevant to the position she sought. By contrast, Carnes credited Moore with exempt equivalency for her experience as a Marketing Coordinator. Contrary to FedEx's equivalency guidelines, which specify a one-year equivalency for a master's degree, Carnes credited Kimball, Erickson, and Moore with two years equivalency for master's degrees. Erickson had not yet completed her master's. A reasonable jury could conclude that Davis was required to meet rigid guidelines that her white colleagues were not, resulting in career stagnation and economic loss.

Davis's contradictory statements in her deposition about whether she believes those actions were taken because of her race do not change this analysis. Davis has consistently maintained in her pleadings that she was discriminated against based on her race. The contradictory statements in her deposition are a credibility issue for the jury. See Ahlers v. Schebil, 188 F.3d 365, 369 (6th Cir. 1999) ("Credibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment . . . .")

**B. Retaliation under the THRA**

Davis alleges that FedEx retaliated against her for filing an EEOC complaint. Davis filed the EECO complaint on February 11, 2011, and FedEx allegedly retaliated by failing to promote her in March 2012.

The THRA makes it unlawful to retaliate against an employee for opposing a discriminatory practice or filing a charge of discrimination forbidden under the statute. <u>See</u> T.C.A § 4-21-301(1). Because there is no direct evidence of retaliation, courts analyze a retaliation claim under the THRA using the <u>McDonnell-Douglas</u> burden-shifting framework. <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 804 (1973); <u>Tolliver v. Children's Home-Chambliss Shelter</u>, 784 F.Supp.2d 893, 909 (E.D. Tenn. 2011). To make a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in legally protected activity, (2) the defendant knew of her protected activity, (3) the defendant thereafter took an adverse employment action against her, and (4) there was a causal connection between the protected activity and the adverse employment action. <u>Tolliver</u>, 784 F.Supp.2d at 909.

FedEx does not dispute that Davis engaged in legally protected activity and that FedEx knew of Davis's protected activity. Although FedEx disputes that it took an adverse employment action against Davis, the Court has found otherwise.

22

After the filing of the EEOC complaint and the first Complaint in this lawsuit, FedEx failed to promote Davis.

To show a causal connection between engaging in a protected activity and an adverse employment action, "a plaintiff must produce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not engaged in the protected conduct." Id. (internal quotation marks omitted). A causal link can be shown by (1) presenting direct evidence, or (2) "through knowledge coupled with a closeness in time that creates an inference of retaliatory discrimination when there is no other compelling evidence." Id. (citing Nguyen v. City of Cleveland, 229 F.3d 559, 566 (6th Cir. 2000)). Although Sixth Circuit authority is divided on whether causation can be shown solely by proximity, "proximity alone generally will not suffice where the adverse action occurs more than a few months – let alone nine months – after the protected conduct." Hamilton v. Starcom Mediavest Grp., 522 F.3d 623, 629 (6th Cir. 2008).

There is no direct evidence of retaliation on the record, and there is an insufficient temporal link to create an inference of causation. Over a year separated the protected activity and the alleged retaliation. Davis cannot make a *prima facie* case of retaliation.

**C. Allegations under the FLSA**

The FLSA allows an employee to bring a private action against an employer for unpaid overtime. 29 U.S.C. § 207; 29 U.S.C § 215. "An employer who violates the FLSA must pay the affected employee the amount of their unpaid . . . overtime compensation . . . and [] an additional equal amount as liquidated damages." Boaz v. FedEx Customer Information Services, Inc., 725 F.3d 603, 605 (2013) (citing 29 U.S.C. § 216(b)) (internal quotation marks omitted). The statute of limitations for violations of the FLSA is two years for non-willful violations and three years for willful violations. 29 U.S.C. § 255(a). A violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited" by statute. Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 128 (1985).

Read in the light most favorable to Davis, FedEx's failure to pay Davis overtime was not willful. Davis admits that before November 2010, she never reported working overtime. When she did report it, she was compensated fully for the hours that she listed. Although the parties dispute whether she has been fully compensated for all of the overtime hours she worked, she accepted McNamara's estimate without suggesting changes. The two-year limitation applies. Because Davis filed the Complaint on November 13, 2011, her claim for unpaid overtime and

liquidated damages is limited to the period beginning on November 13, 2009.

FedEx asks the Court to decide that Davis is not entitled to liquidated damages because FedEx acted in good faith in its failure to pay Davis overtime.  See 29 U.S.C. § 260.  The motion is not well taken.  The burden on an employer to show good faith is "substantial."  Elwell v. Univ. Hosp. Home Care Serv.'s, 276 F.3d 832, 843 (6th Cir. 2002).  It requires "proof that [the employer's] failure to obey the statute was both in good faith and predicated on such reasonable grounds that it would be unfair to impose upon [it] more than a compensatory verdict." Id. at 840 (emphasis omitted) (alternations in original).  Davis testifies that she was never told she was entitled to overtime and was never given an overtime-compensation form.  FedEx has not met its burden.

**V. Conclusion**

For the foregoing reasons, FedEx's Motion for Summary Judgment on Davis's Title VII claims is DENIED.  The Motion on Davis's THRA discrimination claim is DENIED.  The Motion on Davis's THRA retaliation claim is GRANTED.  The Motion on Davis's claim for willful violation of the FLSA is GRANTED.  The Motion to exclude liquidated damages is DENIED.


So ordered this 24th day of March, 2014.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE